IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. BONTEMPO and TERRY MONTELEONE, and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs | ) Civil Action No. 06-745 |
| | ) |
| WOLPOFF & ABRAMSON, L.L.P., | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

It is respectfully recommended that the defendant's motion to dismiss the claim of plaintiff Terry Monteleone and to compel arbitration of the claim (Docket No. 4) be denied.

II. <u>Report</u>:

Presently before the Court is a motion to dismiss the claim of plaintiff Terry Monteleone and to compel arbitration of the claim filed by defendant Wolpoff & Abramson, L.L.P. ("W&A"). For reasons discussed below, W&A's motion to dismiss should be denied.

The plaintiffs, Thomas Bontempo and Terry Monteleone, have filed a purported class action complaint, alleging that W&A obtained arbitration awards through a non-participatory process using false, deceptive or misleading means in connection with the collection of their debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). The plaintiffs are said to be consumers within the meaning of the FDCPA,

while W&A is alleged to be a debt collector within the meaning of the Act.[1]

It is alleged in the complaint that plaintiffs Bontempo and Monteleone obtained consumer credit from MBNA America Bank, N.A. ("MBNA") by means of a credit card; that both plaintiffs incurred debt for personal, family or household purposes and fell behind in their credit card payments; and that as a result, W&A began dunning them on the debt. The plaintiffs contend that W&A obtained arbitration awards against them to recover the amounts of their purported debts, but the arbitration awards are invalid, as the process concluded without any participatory hearing, and Bontempo and Monteleone were not allowed to personally attend the process to oppose the claims presented by W&A, and the amounts of their debts were improperly increased in the arbitral awards. The plaintiffs complain it is W&A's practice to obtain alleged arbitration awards through an invalid, non-participatory process, and to add costs and fees to any arbitral award, after which it uses those awards to attempt to collect debts.

The plaintiffs commenced this action on behalf of themselves and a purported class of individuals "with addresses in Pennsylvania" and from whom W&A "obtained or attempted to obtain... an 'arbitration award' through an arbitral process with non-participatory process absent an agreement to the contrary" (complaint at ¶ 25(i-ii)). The plaintiffs seek actual and statutory damages pursuant to 15 U.S.C. § 1692k, and they invoke the Court's federal question jurisdiction.

In response to the complaint, W&A filed an answer to the claim of plaintiff

---

1. The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The term "debt collector" means in relevant part, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ...debts owed or ... asserted to be ... due another." Id. at § 1692a(6).

Thomas Bontempo. However, it moved to dismiss the claim of plaintiff Terry Montelone and to compel arbitration of the claim pursuant to F.R.Civ.P. 12(b)(1).

   A Rule 12(b)(1) motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a "facial attack", which is based on the legal sufficiency of the claim, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. Conversely, in reviewing a "factual attack", as here, where a challenge is based on the sufficiency of jurisdictional fact, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." See, Carpet Group Intern. v. Oriental Rug Importers, 227 F.3d 62, 69 (3d Cir. 2000). In such a scenario, "the court may consider evidence outside the pleadings", Gould Electronics, 220 F.3d at 176, as "no presumptive truthfulness attaches to plaintiff's allegations". Carpet Group , 227 F.3d at 69.

   In support of its motion to dismiss, W&A avers that MBNA retained it as the law firm to pursue recovery of the outstanding balance due on plaintiff Monteleone's credit card account through binding arbitration. As gleaned from the record, W&A, on behalf of MBNA, filed a claim against Terry Monteleone in the National Arbitration Forum ("NAF"), alleging as follows: that Monteleone opened a credit card account with MBNA, which is governed by a Credit Card Agreement (hereinafter, the "Agreement"); that Monteleone is in default under terms of the Agreement and is indebted to MBNA in the amount of $44,683.03; and that despite repeated demands for payment, Monteleone has not paid the amount due, such that MBNA seeks an award of the amount it is owed, plus all arbitration fees incurred, process of service fees and

attorney fees (hereinafter, the "arbitration claim").[2]

The parties' Agreement, which was appended to the arbitration claim, contains a binding arbitration clause which provides in pertinent part:

> ... Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement of your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed...[3]

The arbitration clause further provides: "This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16... [T]his Arbitration and Litigation section applies to all Claims now in existence or that may arise in the future".[4]

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), provides in relevant part that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA makes agreements to arbitrate enforceable to the same extent as other contracts." Harris v. Green Tree Financial Corp., 183 F.3d 173, 178

---

2. See, Exhibit 1 to W&A's brief in support of its present motion.

3. Id. at "Arbitration and Litigation" section of the Agreement.

4. Id.

4

(3d Cir. 1999). Thus, "federal law presumptively favors the enforcement of arbitration agreements". Id. Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). An arbitration provision should be interpreted to cover the dispute unless it can be stated with "positive assurance" that the dispute was not meant to be arbitrated. Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 44 (3d Cir. 1978).

Believing that the arbitration clause in Terry Monteleone's Agreement mandates that the parties submit their claims to arbitration, W&A filed the aforesaid arbitration claim and served it on plaintiff Monteleone. An arbitrator appointed to decide the claim reviewed all evidence in the matter and entered an award in favor of MBNA in the amount of $54,305.52.[5]

To obtain judgment on the arbitration award, W&A, on behalf of MBNA, filed suit in the Court of Common Pleas of Indiana County, PA.[6] After hearing argument on MBNA's petition to confirm the arbitration award, the Court of Common Pleas issued an Order on June 21, 2005, granting the petition.[7] Terry Monteleone appealed the Order confirming the arbitration award to the Pennsylvania Superior Court. On July 20, 2006, the Superior Court affirmed the Court of Common Pleas' ruling which confirmed the arbitration award.[8]

In moving to dismiss the claim of Terry Monteleone, W&A argues that since the Agreement between Monteleone and MBNA requires that all claims related to their Agreement

---

5. See, Exhibit 2 to W&A's brief in support of its present motion.

6. See, Exhibit 3 to W&A's brief in support of its present motion.

7. See, Exhibit 4 to W&A's brief in support of its present motion.

8. See, Exhibit A to W&A's supplemental brief in support of its present motion.

be resolved through binding arbitration, the Court should dismiss Terry Monteleone's claim and compel arbitration of it. W&A, which is not a signatory to the Agreement, makes several arguments in support of its position, all of which are disputed by Monteleone.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally apply state law principles that govern the formation of contracts." First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995). Here, the Agreement contains a choice of law provision, specifying it is to be "governed by the laws of the State of Delaware".[9] Plaintiff Monteleone agrees that Delaware law governs this dispute.

W&A asserts that Monteleone is collateral estopped from challenging the validity of the arbitration agreement, for on July 20, 2006, the Pennsylvania Superior Court affirmed the decision of the Court of Common Pleas which confirmed the arbitration award entered against Monteleone. It is clear, however, that collateral estoppel is inapplicable here.

Collateral estoppel bars a party from re-litigating an issue previously litigated and resolved by a fact-finder. Higgins v. Walls, 901 A.2d 122, 137 (Del. Super. 2005). In order for collateral estoppel to apply, the following criteria must be met: (1) the issue previously decided must be identical to the issue at bar; (2) the prior issue was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Id.

We find that the first and fourth criteria listed above are not satisfied. That is, the issue previously decided in the state court matter is not identical to the issue before us. In the

---

9. See, "What Law Applies" Section of the Agreement.

state court action, MBNA filed a petition to confirm the arbitration award entered against Monteleone in the NAF, and the Court of Common Pleas confirmed the arbitration award for the sole reason that Monteleone "failed to make an application to vacate or modify the arbitration award within thirty (30) days prescribed by 42 Pa.C.S.A. § 7314".[10]  On July 20, 2006, the Pennsylvania Superior Court affirmed that ruling, finding that Monteleone "waived his present challenges to the arbitration award by failing to file a petition to modify or vacate that award within the time provided by law."[11]  Clearly, the issue presented here -- whether Monteleone is bound to arbitrate his FDPCA claim against W&A by virtue of his Agreement with MBNA -- was neither decided in the state court matter, nor litigated there.  As a result, collateral estoppel is not applicable here.

W&A also argues that it may compel arbitration of Monteleone's claim against it, because it was MBNA's "agent" as set forth in the arbitration clause.  As noted above, the arbitration clause in the Agreement provides that: "[a]ny claim or dispute ("Claim") by either you or us against the other ... shall be resolved by binding arbitration."

The word "you" in the above clause pertains to credit card users such as Terry Monteleone.  The word "us", however, is defined in the arbitration clause in the following ways:

> ... 'us' means MBNA America Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your account, and all of their officers, directors, employees, <u>agents</u>, and assigns or any and all of them. (Emphasis added). Additionally, ... 'us' shall mean any third party providing benefits, services, or products in connection with the account (including but not

---

10.   See, Exhibit 4 to W&A's brief in support of its present motion.

11.   See, Exhibit A to W&A's supplemental brief in support of its present motion.

>limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, <u>debt collectors</u>, and all of their officers, directors, employees and agents) <u>if and only if, such a third party is named by you as a codefendant in any Claim you assert against us.</u> (Emphasis added).[12]

W&A insists it may compel arbitration of Monteleone's claim against it, as it acted as MBNA's "agent" in pursuing the underlying arbitration claim (and thereby fits within the first definition of "us"). Conversely, Monteleone argues that W&A may not compel arbitration of his claim under the Agreement, as it is a "debt collector", and the complaint names it as the lone defendant, not as a co-defendant with MBNA (such that it falls within the additional definition of "us").

Under Delaware law, the construction of contract language is a question of law. <u>Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.</u>, 616 A.2d 1192, 1195 (Del. 1992). In interpreting a contract, the primary goal is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted." <u>Comrie v. Enterasys Networks, Inc.</u>, 837 A.2d 1, 13 (Del. Ch. 2003). In order to ascertain intent, Delaware courts utilize an "objective" theory of contracts. <u>Haft v. Haft</u>, 671 A.2d 413, 417 (Del. Ch. 1995). Under this theory, where parties enter into an unambiguous written contract "a contract's construction should be that which would be understood by an objective reasonable third party." <u>In re: Stone & Webster, Inc. v. Shaw Group</u>, 2005 WL 1036556, *5-6 (D.Del., May 3, 2005).

However, "inconsistent contractual provisions may create ambiguity in a contract." <u>Id.</u> A contract is ambiguous "when the provisions in controversy are reasonably or

---

12. See, Arbitration and Litigation Section of the Agreement.

fairly susceptible of different interpretations or may have two or more different meanings." Lorillard Tobacco Co. v. American Legacy Foundation, 2006 WL 2035682, *8 (Del.Super., July 17, 2006). "Ambiguity does not exist where a court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." Id.  Certainly, "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." Id.

As discussed above, the arbitration clause provides in pertinent part that any Claim "by either you or us against the other ... shall be resolved by binding arbitration."  In one part of the arbitration clause, the word "us" is defined to encompass MBNA and its "agents". Thus, W&A insists that as the law firm retained by MBNA to collect debts for it under the Agreement, it is MBNA's "agent" and a named intended third party beneficiary under the arbitration clause.

However, the word "us" is defined in another portion of the arbitration clause as encompassing "any third party providing benefits [or] services ... in connection with the account (including but not limited to ... debt collectors...) if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us."  According to Terry Monteleone, W&A was a debt collector for MBNA on his account, and since he named W&A as the sole defendant in his FDCPA suit (not as a codefendant with MBNA), the arbitration clause does not pertain to W&A, and it may not compel arbitration of his claim against it.

Recently, a similarly-worded arbitration clause was reviewed and interpreted by the court in Karnette v. Wolpoff & Abramson, L.L.P., 2006 WL 2222673 (E.D.Va., Aug. 2, 2006).  In that case, as here, credit cards were issued by MBNA to consumers who used the credit

cards for personal, household and family purposes. The consumers became indebted, and upon their defaults, MBNA referred the accounts for collection to W&A, a multi-state debt collection law firm. 2006 WL 2222673, *1. In Karnette, as here, the consumers filed a purported class action against W&A, alleging that it engaged in false, deceptive and unfair debt collection practices in violation of the FDCPA. W&A subsequently moved to compel arbitration of the plaintiffs' FDCPA claim, citing the arbitration clause in MBNA's agreements with them. Id.

In Karnette, the arbitration clause at issue was identical to the one here, and the parties made similar arguments in support of their positions as here. Id. at *1-*2. Relying on Delaware law (which governed MBNA's credit card agreement), the Karnette Court interpreted the arbitration clause in favor of the plaintiffs and against W&A, stating:

> W&A argues that, as a law firm working for MBNA, it is an agent of MBNA, and, therefore, is a named third party beneficiary of the arbitration provision... As such, W&A claims that it is protected from suit by reading the arbitration clause to state, 'any claims by... you... against the... agents... of the other... shall be resolved by binding arbitration.'
>
> However, it is undisputed that W&A is a 'debt collector' as that term is defined in the FDCPA. Where a contract specifies different rights to different specifically mentioned entities, the contract must be interpreted to require that specificity. *See,* DCV Holdings, Inc. v. ConAgra, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.") [citations omitted]. *see generally* Am. Jur. Contracts § 363.[13]

---

13. In relevant part, Am. Jur. Contracts § 363 provides: "In general, where there are general and specific provisions in a contract relating to the same thing, the special provisions control... Where the parties express themselves in reference to a particular matter, the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular matter may be included, does not necessarily indicate that the
(continued...)

> Otherwise, the use of two different terms would be mere surplusage. Colautti v. Franklin, 439 U.S. 379 (1979) (one clause should not be read to render another inoperative).
>
> Because the credit card agreement specifically mentions debt collectors in the arbitration provision, that term cannot be construed to be without purpose. While a debt collector may function as an agent for the specific purpose of collecting debts, time-honored principles of contract construction require a thing specifically named to be specifically treated. *E.g.* Bock v. Perkins, 139 U.S. 628, 634 (1891) ("The particular description [in the contract] must control the... general description..."); DCV Holdings, Inc. v. ConAgra, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language...")... Accordingly, W&A is to be treated as a debt collector rather than as a general agent because W&A functioned only to serve MBNA for the purpose of collecting overdue credit card debts. By the terms of the arbitration agreement, there is no agreement to arbitrate the claim against W&A under the FDCPA because the plaintiffs' action does not name MBNA as a co-defendant.

2006 WL 2222673, at *4-*5.

We believe the Karnette Court's construction of the arbitration clause is proper.

As explained in Karnette:

> By putting the Arbitration and Litigation section in the credit card agreement, MBNA sought to limit its exposure, and the exposure of all in its corporate family, to litigation in court. It also foresaw that plaintiffs might sue third party entities together with MBNA. Therefore, MBNA wrote a clause into the arbitration agreement that required arbitration where MBNA was joined as a co-defendant in a suit against a third party. However, for obvious reasons, MBNA had less reason for concern about suits against third parties where MBNA was not a co-defendant. Thus, given its plain meaning and accorded a common sense construction, the arbitration clause does not operate here because MBNA is not a co-defendant in this action.

---

13. (...continued)
parties had the particular matter in mind.

<u>Id.</u> at *4.

We too interpret the arbitration clause against W&A for the reasons set forth in <u>Karnette</u>.  Furthermore, we disagree with W&A that Monteleone is equitably estopped from denying that his claim against it is to be resolved by binding arbitration.

"Delaware allows a nonsignatory to a contract to compel a signatory to arbitrate under an equitable estoppel theory."  <u>Wilcox & Fetzer, Ltd. v. Corbett & Wilcox</u>, 2006 WL 2473665, *4 (Del. Ch., Aug. 22, 2006).  Under this theory, a signatory is compelled to arbitrate with a nonsignatory in either of two circumstances:

> <u>First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory</u>.  When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate.  <u>Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract</u>...

<u>Id.</u> at *5 (emphasis added), quoting <u>Grigson v Creative Artists Agency</u>, 210 F.3d 524, 527 (5th Cir. 2000) (quoting <u>MS Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999)).

Here, neither of the above-mentioned circumstances for equitable estoppel is applicable.  First, Terry Monteleone need not rely on the terms of his Agreement with MBNA to assert his claim against W&A.  While Monteleone states in his FDCPA complaint that he obtained consumer credit from MBNA through a credit card, after which he fell behind in his payments (complaint at ¶¶ 15, 17), the crux of his claim is that W&A violated the FDCPA by

obtaining an arbitration award through a non-participatory process using false, deceptive or misleading means in connection with the collection of his debt (complaint at ¶¶ 1, 19-21, 32). Monteleone could have asserted his claim against W&A without making any reference to his Agreement with MBNA. Likewise, the second circumstance for equitable estoppel does not apply, as Monteleone's complaint raises no claim against MBNA, which is not named as a co-defendant with W&A.

There is another scenario in which courts have bound a signatory to arbitrate with a nonsignatory under a theory of equitable estoppel, namely:

> because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'

E.I. Dupont De Nemours v. Rhone Poulenc Fiber, 269 F.3d 187, 199 (3d Cir. 2001), quoting Thomson-CSF, S.A. v. American Arbitration Ass'n., 64 F.3d 773, 779 (2d Cir. 1995). Unfortunately for W&A, this theory of equitable estoppel is also inapplicable, as no "close relationship" (such as a corporate parent and subsidiary) exists between W&A and Monteleone; W&A appears to have no obligations or duties under the Agreement between Monteleone and MBNA; and Monteleone's claim against W&A is not intertwined with his Agreement with MBNA. For these reasons, equitable estoppel is not appropriate here.

Therefore, it is recommended that the defendant's motion to dismiss the claim of Terry Monteleone and to compel arbitration of the claim be denied.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections

shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                  Respectfully submitted,

                                                  <u>s/ ROBERT C. MITCHELL</u>
                                                  United States Magistrate Judge

Dated: September 20, 2006