IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS J. BONTEMPO and TERRY   )
MONTELEONE, and all others similarly   )
situated,   )
           Plaintiffs,   )
   )
        vs   )  Civil Action No. 06-745
   )
WOLPOFF & ABRAMSON, L.L.P.,   )
        Defendant.   )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion for summary judgment (Document No. 25) be granted as to ¶ 32(b) of the complaint, on the plaintiffs' claim that its notice of arbitration was false, deceptive or misleading, and on the plaintiffs' claim that its request for all arbitration fees incurred was misleading and not authorized by the parties' agreement, and denied in all other respects.

II. Report:

Presently before the Court is a motion for summary judgment filed by defendant Wolpoff & Abramson, L.L.P. ("W&A"). For reasons discussed below, W&A's motion for summary judgment should be granted in part and denied in part.

Plaintiffs Thomas Bontempo and Terry Monteleone have filed a class action complaint, alleging that W&A obtained arbitration awards through a non-participatory process using false, deceptive or misleading means in connection with the collection of their debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). The

Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

The record shows that Bontempo and Monteleone obtained consumer credit from MBNA America Bank, N.A. ("MBNA") by means of a credit card, and both plaintiffs fell behind in their credit card payments. To pursue collection of their delinquent accounts, MBNA retained W&A, a law firm whose practice includes creditors' rights and consumer debt collection. W&A contacted the plaintiffs and demanded payment of their overdue accounts to no avail.

The credit card agreement between MBNA and the plaintiffs (the "Agreement") contains a mutual binding arbitration clause which provides in pertinent part:

> ... Any claim or dispute ("Claim") by either you or us against the other ... arising from or relating in any way to this Agreement or any prior Agreement of your account ... including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement ... shall be resolved by binding arbitration. The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed...

Pursuant to the Agreement, W&A filed arbitration claims in the NAF against each plaintiff on behalf of MBNA.

In the arbitration claim filed against Terry Monteleone, W&A sought an award of the principal amount of the debt owed to MBNA, plus all arbitration fees incurred, process of service fees and attorney fees.[1] A notice of arbitration was sent to Monteleone, but he did not file a response to the arbitration claim, nor demand a document hearing or a participatory hearing, which were options afforded him.[2]

---

1.   See, Exhibit 1 to W&A's brief in support of its motion to dismiss (Document No. 5).

2.   See, W&A's statement of material facts at ¶ 12 and plaintiffs' response thereto.

The NAF referred the arbitration claim against Monteleone to an arbitrator, and on May 25, 2004, the arbitrator issued an award in favor of MBNA.[3]  To enforce the arbitration award, MBNA filed suit in the Court of Common Pleas of Indiana County, PA.[4]  After hearing argument on MBNA's petition to confirm the arbitration award, the Court of Common Pleas issued an Order on June 21, 2005 which granted the petition, stating that Monteleone "failed to make an application to vacate or modify the arbitration award within the thirty (30) days prescribed by 42 Pa.C.S.A. § 7314".[5]

Terry Monteleone appealed the Order confirming the arbitration award to the Pennsylvania Superior Court.  On July 20, 2006, the Superior Court affirmed the ruling of the Court of Common Pleas, concluding that "Appellant has waived his present challenges to the arbitration award by failing to file a petition to modify or vacate that award within the time provided by law."[6]  Monteleone filed a petition for allowance of appeal with the Pennsylvania Supreme Court, and that Court denied the petition in an Order dated December 28, 2006.[7]

With respect to plaintiff Thomas Bontempo, W&A filed four separate arbitration claims against him in the NAF for having incurred debts with MBNA on four separate accounts.[8] Regarding NAF Case FA 0501000410703, the record shows that on April 15, 2005, Bontempo

---

3.   Id. at ¶ 13.

4.   See, Exhibit 3 to W&A's brief in support of its motion to dismiss (Document No. 5).

5.   See, Exhibit 4 to W&A's brief in support of its motion to dismiss (Document No. 5).

6.   See, Exhibit 3 to W&A's appendix in support of its present motion (Document No. 28).

7.   See, Exhibit 4 to W&A's appendix in support of its present motion (Document No. 28).

8.   See, W&A's statement of material facts at ¶ 17 and plaintiffs' response thereto.

was personally served with a copy of the arbitration claim, summary of account information, notice of arbitration and terms and conditions of the credit card agreement.  The claim in that case asked for an award of the principal amount of the debt, interest as of the date of filing, legal interest thereafter, plus all arbitration fees, process of service fees and attorneys fees.[9]  Bontempo filed a written response to the arbitration claim, but he did not request a participatory hearing.[10]  On July 26, 2005, the arbitrator entered an award in favor of MBNA.[11]

In NAF Case FA 0502000419384, the record shows that on March 15, 2005, Bontempo was served with the arbitration claim, summary of account, notice of arbitration and credit card terms and conditions.  The claim in that case asked for an award of the principal amount of the debt, interest as of the date of filing, legal interest thereafter, plus all arbitration fees, process of service fees and attorney fees.[12]  Bontempo objected to the arbitration proceeding, and after considering the parties' submissions, the arbitrator determined that Bontempo was not bound by the agreement to arbitrate.[13]  MBNA then filed suit on the debt in the Court of Common Pleas of Allegheny County, PA, where the matter is currently pending.[14]

In NAF Case FA 0501000410936, Bontempo was served with the arbitration claim, summary account information, notice of arbitration and credit card terms and conditions.

---

9.   Id. at ¶ 18.

10.   Id. at ¶ 19.

11.   Id. at ¶ 20.

12.   Id. at ¶ 21.

13.   Id. at ¶ 22.

14.   Id. at ¶ 23.

The claim asked for an award of the principal amount of the debt, interest as of the date of filing, legal interest thereafter, plus all arbitration fees, process of service fees and attorney fees.[15] Bontempo filed a response to the claim, after which the arbitrator entered an award in favor of MBNA.[16]  The matter was submitted to the Court of Common Pleas of Allegheny County, PA, which entered a judicial arbitrator award in favor of MBNA.[17]  Bontempo has filed an appeal from the judicial arbitration with the Court of Common Pleas.[18]

In NAF Case FA 0400357675, W&A filed an arbitration claim against Bontempo on behalf of MBNA; however, it was unable to make service, whereupon W&A dismissed the claim without prejudice.[19]

It is the plaintiffs' position that W&A violated the FDCPA by engaging in false, deceptive or misleading means in obtaining arbitration awards against them without a participatory hearing, such that they were not allowed to personally attend the process to oppose the claims.  The plaintiffs also complain that W&A violated the FDCPA by increasing the amounts of their debts in the arbitral awards by adding costs and fees thereto.  Thus, following entry of the arbitration awards, the plaintiffs commenced this action on behalf of themselves and a class of individuals "with addresses in Pennsylvania" and from whom W&A "obtained or attempted to obtain... an 'arbitration award' through an arbitral process with non-participatory

---

15.   Id. at ¶ 24.

16.   Id. at ¶ 25.

17.   Id. at ¶ 26.

18.   Id. at ¶ 27.

19.   Id. at ¶ 28.

process absent an agreement to the contrary" in connection with attempts to collect alleged debts.

W&A has moved for summary judgment on several grounds.  It argues that plaintiff Monteleone is barred from collaterally attacking the arbitration award entered against him in the Court of Common Pleas for Indiana County, which was affirmed by the Pennsylvania Superior Court.  It also argues that Monteleone and Bontempo are collaterally estopped from attacking the validity of the arbitration awards entered against them.  W&A also insists that the plaintiffs have proffered no evidence showing that it violated the FDCPA in pursuing arbitration claims against them.  Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movants are entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

Issue preclusion, also known as direct or collateral estoppel, refers to "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 77 n.1 (1984).   To determine the preclusive effect of Monteleone's prior state court action, we must look to the law of the adjudicating state, which was Pennsylvania.  See, Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999).

Under Pennsylvania law, collateral estoppel will bar a subsequent suit if: (1) an issue decided in a prior action is identical to one presented in a later suit; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to that action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.  Jones v. UPS, 214 F.3d 402, 405 (3d Cir. 2000); Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).

6

We find that collateral estoppel does not bar Monteleone's present claim. That is because the issue decided in Monteleone's state court case is not identical to the issue here.  In the state court action, MBNA filed a petition to confirm the arbitration award entered against Monteleone in the NAF, and the Court of Common Pleas confirmed the award for the sole reason that Monteleone "failed to make an application to vacate or modify the arbitration award within thirty (30) days prescribed by 42 Pa.C.S.A. § 7314".[20]  Monteleone filed an appeal to the Pennsylvania Superior Court, challenging the validity of the arbitration agreement, as well as the arbitrator's jurisdiction to enter an award when he did not voluntarily participate in the arbitration.[21]  On July 20, 2006, the Superior Court affirmed the ruling of the Court of Common Pleas, finding that Monteleone "waived his present challenges to the arbitration award by failing to file a petition to modify or vacate that award within the time provided by law."[22]  Clearly, the issues presented here -- whether W&A violated the FDCPA by obtaining an arbitration award against Monteleone through a non-participatory process using false, deceptive or misleading means in connection with the collection of his debts, and by increasing the amount of his debt by adding costs and fees to the arbitral award -- were neither decided in the state court matter, nor litigated there.  Thus, Monteleone's complaint against W&A is not barred by collateral estoppel.

In further support of summary judgment, W&A argues that Monteleone and Bontempo are barred from collaterally attacking the arbitration awards entered in favor of MBNA.  As gleaned from the complaint, however, the plaintiffs are not attempting to collaterally

_____

20.   See, Exhibit 4 to W&A's brief in support of its motion to dismiss.

21.   See, Exhibit 3 to W&A's appendix in support of its present motion.

22.   Id.

7

attack the arbitration awards.  Rather, they contend that W&A engaged in illegal acts in

connection with the collection of their debts in violation of 15 U.S.C. §§ 1692e and 1692f.

Specifically, in ¶¶ 32(a)-(d) of the complaint, the plaintiffs allege that W&A

violated the FDCPA by:

> (a)      Misrepresenting the character, amount or legal status
> of the alleged debt in violation of 15 U.S.C. § 1692e(2)([A]);
>
> (b)      Threatening action that cannot legally be taken or that
> is not intended to be taken in violation of 15 U.S.C. § 1692e(5);
>
> (c)      Using false, deceptive, or misleading representations or
> means in an attempt to collect a debt in violation of 15 U.S.C.
> §§ 1692e and e(10); and
>
> (d)      Attempting to collect any amount not authorized by
> agreement creating the debt or permitted by law in violation of
> 15 U.S.C. § 1692f(1).[23]

With respect to ¶ 32(b) of the complaint set forth above, the plaintiffs have not

---

23.    In its reply brief, W&A argues that in opposing its motion for summary judgment, the plaintiffs have raised several claims that were not set forth in their complaint, including claims that W&A violated the FDCPA by requesting a liquidated 15% attorney fee in the arbitration claims, by making false and misleading statements in state court complaints that were filed to enforce the arbitration claims, such as by failing to delineate the amount of attorneys fees and other expenses from the unpaid balance due on the account, and by asking for all arbitration fees incurred in its claims.  According to W&A, the Court should not consider these "new claims", as they were not presented in the plaintiffs' prior pleadings.

Courts are reluctant to allow a plaintiff to raise a new theory of liability in response to a motion for summary judgment that was not set forth in the complaint, nor added in discovery.  See, Laurie v. National Passenger Railroad Corp., 105 Fed.Appx. 387, 392-93 (3d Cir. 2004), citing Speziale v. Bethlehem Area School Dist., 266 F.Supp.2d 366, 371, n.3 (E.D.Pa. 2003), OTA Ltd. P'Ship v. Forcenergy, 237 F.Supp.2d 558, 561, n. 3 (E.D.Pa. 2002), and Bulkoski v. Bacharach, 1 F.Supp.2d 484, 487 (W.D.Pa. 1997), aff'd., 149 F.3d 1163 (3d Cir. 1998).  Here, however, the plaintiffs have not raised a new theory of liability in opposing summary judgment.  Rather, they assert -- albeit with greater detail than was set forth in the complaint -- that  in pursuing arbitration claims against them, W&A violated provisions of the FDCPA identified in ¶ 32 of the complaint.  Thus, we will not refrain from considering the plaintiffs' claims set forth in their brief opposing summary judgment.

opposed W&A's motion for summary judgment.  Indeed, the record fails to show that W&A

threatened any action against the plaintiffs that could not legally be taken.  Thus, W&A's

motion for summary judgment should be granted on ¶ 32(b) of the complaint.

In addition W&A is entitled to summary judgment on the plaintiffs' claim

that it sent them a notice of arbitration which was false, deceptive or misleading.  According to

the plaintiffs, the notice of arbitration was false, deceptive or misleading, for in giving them the

option to demand a hearing, the notice stated:

> You may request a Hearing in your Response or in a
> separate writing.  **Unless you have agreed otherwise,**
> **an In-person Participatory Hearing will be held in**
> **the Judicial District where you reside or do business.**
> You may also request a hearing on-line or by telephone.
> Your written Request for a hearing must be filed with the
> Forum.  You must also serve a copy of your Request on
> the Claimant and any other Parties... (emphasis added).[24]

The plaintiffs interpreted the above highlighted phrase to mean that an in-person

participatory hearing would be held unless the debtor agreed otherwise, such that it was not

necessary to request a hearing.  In actuality, however, the notice of arbitration required the

plaintiffs to request an in-person hearing to participate in one.

We agree with W&A that even if said notice was misleading, it is excused from

liability pursuant to the FDCPA's bona fide error defense, and the plaintiffs do not argue

otherwise.   The bona fide error defense, set forth in 15 U.S.C. § 1692k(c), provides:

> A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector shows
> by a preponderance of evidence that the violation was not
> intentional and resulted from a bona fide error notwithstanding

---

[24].   See, notice of arbitration in Exhibit 1 to W&A's brief in support of its motion to dismiss.

the maintenance of procedures reasonably adapted to avoid
any such error.

To qualify for the bona fide error defense under § 1692k(c), W&A must show
that: (1) its alleged violation of the FDCPA was not intentional; (2) it resulted from a bona fide
error; and (3) it maintained procedures reasonably adapted to avoid any such error.  See, Kort v.
Diversified Collection Services, 394 F.3d 530, 537 (7th Cir. 2005).   Significantly, "[a] debt
collector need only show that its FDCPA violation was unintentional, not that its actions were
unintentional."  Id., citing Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998).
Thus, the fact that W&A intentionally sent the notice of arbitration to the plaintiffs does not
negate the bona fide error defense, so long as it shows that it did not intend to violate the
FDCPA.  See, Kort, supra, 394 F.3d at 537.

The record shows that W&A sent the notice of arbitration to the plaintiffs in
accordance with NAF's Code of Procedure.[25]  The notice of arbitration to which the plaintiffs
complain is the 2003 notice, which contains the aforesaid highlighted language they found
misleading.  In 2005, however, it appears that NAF amended its notice of arbitration by taking
out the portion of the 2003 notice which the plaintiffs found misleading.  Ronald M. Abramson,
managing partner of W&A, has submitted an affidavit, wherein he avers:

> At the time the 2005 amendment to the NAF's Code of
> Procedure took effect, the NAF continued to accept the 2003
> Notice of Arbitration for filing by W&A until such time as
> the NAF furnished an updated template to W&A enclosing
> the new Notice of Arbitration language.  The new template
> was delivered to W&A in July 2005 and was then placed in
> use in conformity with the modifications to the NAF's Code

---

25.   See, affidavit of Ronald M. Abramson at ¶¶ 6-7.

of Procedure.[26]

The plaintiffs have not controverted W&A's assertion that any violation of the FDCPA arising from the notice of arbitration was unintentional and resulted from a bona fide error.  Indeed, while NAF amended its notice of arbitration in 2005, it continued to accept the 2003 notice of arbitration for filing by W&A until such time as it furnished an updated template to it containing the new notice language in July 2005.[27]  By utilizing notice forms which were authorized by NAF, it also appears that W&A maintained reasonable procedures to avoid violating the FDCPA.  Thus, by virtue of the FDCPA's bona fide error defense, W&A is entitled to summary judgment on the plaintiffs' claim that its notice of arbitration was false, deceptive or misleading.

In contrast, W&A is not entitled to summary judgment on several acts which are said to have violated provisions of the FDCPA recited in ¶¶ 32(a), (c) and (d) of the complaint.  For instance, in ¶ 32(a) of the complaint, W&A is said to have violated 15 U.S.C. § 1692e(2) which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt", including falsely representing: (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by a debt collector for the collection of a debt.

In ¶ 32(d) of the complaint, W&A is alleged to have violated 15 U.S.C. § 1692f(1).  That provision of the FDCPA prohibits: "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

---

26.   Id. at ¶ 10.

27.   Id.

11

expressly authorized by the agreement creating the debt or permitted by law."

The plaintiffs contend that in filing arbitration claims against them in the NAF, W&A violated § 1692e(2)(A) & (B), as well as § 1692f(1) by requesting a liquidated attorney fee in the amount of 15%, which is not permitted under the parties' Agreement.[28]  In pertinent part, MBNA's Agreement with the plaintiffs provides:

### When We May Require Immediate Payment

> If you are in default, we can require immediate payment of your total outstanding balance and, unless prohibited by applicable law and except as otherwise provided under the *Arbitration and Litigation* section of this Agreement, we can also require you to pay the costs we incur in any collection proceeding, as well as reasonable attorneys' fees if we refer your account for collection to an attorney who is not our salaried employee.

The plaintiffs argue that while the Agreement contemplates the payment of "reasonable attorneys' fees", W&A's request for an arbitration award which included attorney fees "equaling 15% of the outstanding principal balance" misrepresented the amount of the debt owed and the compensation which may be received for the collection of the debt in violation of § 1692e(2)(A) & (B).  They also aver that in seeking a liquidated attorney fee not expressly authorized by the parties' Agreement, W&A violated § 1692f(1).

In support of their position, the plaintiffs cite Stolicker v. Muller, 2005 WL 2180481 (W.D.Mich, Sept. 9, 2005), where a credit card agreement required a debtor to pay "reasonable attorneys' fees" if collection of the debt was referred to an outside attorney.  Id. at *1.  In Stolicker, an outside law firm (Muller, P.C.) was hired to collect a debt on behalf of

---

28.   See, Exhibit 5 to W&A's appendix in support of its present motion at ¶ 4.

Capital One, and it filed a state court suit seeking to collect a sum comprised of damages, costs

and attorney fees (amounting to 25% of the principal debt) which it claimed was "pursuant to

agreement with [Stolicker]".  Id.  Stolicker subsequently filed a class action against the law firm

in federal court for violating the FDCPA and state law.  Id.

> In Stolicker, the district court opined:

> > The contract between Capital One and Stolicker provides
> > a contractual basis for the award of a 'reasonable attorney
> > fee' only.  There is no clause which permits Capital One
> > and the Muller law firm to select a liquidated sum.  It would
> > take a leap of logic to find, as Muller urges, that Stolicker
> > agreed to a liquidated amount (25% of the principal debt or
> > otherwise) of attorney fees in the event she defaulted.

Id. at *4, citing Kojetin v. C U Recovery, Inc., 1999 WL 1847329, *2 n.3 (D.Minn. March 29,

1999) (stating: "The FDCPA would provide little protection to a debtor... if, in agreeing to pay

'reasonable collection costs,' a debtor was held to have agreed to pay whatever percentage fee a

debt collection service happened to charge a lender"), aff'd., 212 F.3d 1318 (8th Cir. 2000).

> In Stolicker, the court stated:

> > The central issue in this case, which Muller repeatedly
> > overlooks, is whether the request of a liquidated amount
> > as an attorney fee is false or misleading when the contract
> > authorizing the fee permits only a 'reasonable attorney fee'.

Id. at *5.  As explained in Stolicker:

> > The inclusion of a liquidated sum as attorney fees with the
> > principle debt owed altered the terms of the contract between
> > Capital One and Stolicker and violated the FDCPA.  The contract
> > she signed with Capital One required that she pay a 'reasonable
> > attorney fee', not ... any other liquidated amount...

Id. at *4.  Based on the foregoing, and as there is insufficient evidence to establish if W&A's

request for attorney fees was reasonable, it is not entitled to summary judgment on the plaintiffs'

13

claim that its request for a liquidated attorney fee in the amount of 15% violated the FDCPA.

Bontempo and Monteleone also argue that W&A violated the FDCPA by filing state court complaints against them which misrepresented the character, amount or legal status of their debts in violation of §§ 1692e(2)(A) & (B) and § 1692e(10).  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  It is the plaintiffs' position that W&A violated the above sections of the FDCPA by failing to itemize the debt sought to be collected in paragraph 8 of its state court complaint against Monteleone.

In paragraph 8 of its state court complaint against Monteleone, W&A alleged that "[a]s of the date of this Complaint, the remaining balance due, owing and unpaid on Defendant's credit card account, as a result of charges made by said Defendant(s) and/or any authorized users is the sum of $54,305.52."[29]  That sum said to be owed in the state court complaint against Monteleone included the following items which W&A failed to identify: the principal amount of Monteleone's debt (which was $44,683.03 according to the arbitration claim filed against him in the NAF), all arbitration fees incurred, interest on the debt, and attorney fees.[30]

Courts hold that "[e]ven if attorneys' fees are authorized by contract, ... debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors", including "how the total amount due was determined if the demand for payment includes add-on expenses like attorneys' fees".  Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004).  Also see, Stolicker, supra, 2005 WL 2180481, at *5, n.4 ("The failure to

---

29.  See, Exhibit 3 to W&A's brief in support of its motion to dismiss.

30.  See, Exhibit 1 to W&A's brief in support of its motion to dismiss.

14

clearly differentiate between the credit card debt owed and the additional request for attorney fees could be misleading").  Here, W&A's state court complaint against Monteleone failed to identify how the amount claimed to be owed was determined.  Thus, W&A is not entitled to summary judgment on the plaintiffs' claim that it violated the FDCPA by filing state court complaints against them which misrepresented the character, amount or legal status of their debts.

The plaintiffs also argue that W&A's arbitration claims against them which requested "all arbitration fees incurred" violated §§ 1692e(2)(A) & (B) and 1692f(1), as such requests were misleading and not authorized by the parties' Agreement, which limited arbitration fees to an amount no greater than what a debtor would have to pay in state court costs.  We disagree.  That is because the "Arbitration and Litigation" portion of the Agreement relied upon by the plaintiffs is inapposite here, as it pertains to instances where an arbitration claim is initiated by a customer of MBNA.  In that case, the Agreement provides:  "At your written request, we will advance any arbitration filing fee, or administrative and hearing fees <u>that you are required to pay to pursue a Claim in arbitration</u> ... In no event will you be required to reimburse us for any arbitration filing, administrative, or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a state court with jurisdiction."  (emphasis added).[31]  In this case, the arbitration claims at issue were not pursued by the plaintiffs.

Therefore, it is recommended that the defendant's motion for summary judgment (Document No. 25) be granted as to ¶ 32(b) of the complaint, on the plaintiffs' claim that its notice of arbitration was false, deceptive or misleading, and on the plaintiffs' claim that its

---

31.   See, Arbitration and Litigation section of the Agreement in Exhibit 1 to W&A's brief in support of its motion to dismiss.

request for all arbitration fees incurred was misleading and not authorized by the parties'

agreement, and denied in all other respects.

        Within thirteen (13) days after being served with a copy, any party may serve and

file written objections to this Report and Recommendation.  Any party opposing the objections

shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file

timely objections may constitute a waiver of any appellate rights.

                          Respectfully submitted,

                          s/ ROBERT C. MITCHELL
                          United States Magistrate Judge

Dated: March 27, 2007

16